Okay, the case deals with a patent application for a cartwheel training mat. The primary reference cited against the case, the Curley reference, shows a yoga mat having a substantially different structure. The argument relied on throughout by the patent office is that although the structure is different, one could rearrange, reconfigure the embodiments shown in Curley to arrive at the structure of the present claims. However, there is a big gap between what is possible and what is obvious. Looking to the present claim language, our claims recite a plurality, for example, Claim 1, a plurality of sequentially aligned sections where two adjacent center sections are designated exclusively for receiving hands. But, Mr. Ryan, you started out by telling us that this is for a cartwheel, but the claims which are before us are broader. Isn't this the problem that was faced? Had it been sufficiently restricted, perhaps, the prior art would have been different. I don't believe that a functional description of adding the word cartwheel would have made a substantial difference during prosecution. What we're looking at is a specific arrangement of sections in the mat that make it particularly well-suited for training for a cartwheel. Looking at the Curley reference, Figure 1, you'll see the preferred, in fact, the only embodiment set forth in the reference. It has two sections, numbers 120 and 125, arranged on the outside of the mat. These are the sections for hands, as explicitly set out in the reference. The Patent Office relies, instead of the explicit teachings of the reference, on Paragraph 50, which allows the user to rearrange the sections. The Patent Office's position is that that figure, this existing device, renders our claims obvious. My position is that that cannot be. I could take out a block of clay and mold it into any of a variety of patented shapes. That block of clay does not render those shapes obvious. The key, legally, the key for a determination of obviousness rests on the knowledge of those having ordinary skill in the art. And the way that we find that knowledge is by looking at specific citations to the prior art. In the present case, the Curley reference does not supply these structural features. There are no two center sections exclusively designated for hands. And in order to create that, one has to bring in additional knowledge that simply was not cited during prosecution by the examiner. To take an additional point from our claim language, we recite a plurality of and aligned were of dispute during prosecution. To look at sequential first, the examiner provided a definition that stated, a sequence is the following of one thing after another. We supplied a different definition, but I would say, for today's purposes, even accepting the examiner's entire definition, that feature still is neither shown nor suggested by the reference. You can look at the figure one of Curley and it will show a set of different positions. However, there is no sequence to them. You cannot identify any ordering relationship. Nothing in the entire reference designates one as following after the other. Sequence is important in our claims and to our invention. Going back to our own specification, in our background, we describe how a person who uses an improper sequence will not be able to perform a cartwheel. We give a specific example of a person putting both of their hands down at the same time. That shows that a sequence has to have some kind of order to it, and if the reference does not show or suggest any kind of order to these different positions, then it does not render this feature obvious. Similarly, the term aligned was disputed as to its definition. For this term, the examiner supplied... Your argument is that it can't be sequential if there is any kind of a gap. That's going more towards the word adjacent. We have a plurality of sequentially aligned sections and then two adjacent center sections. I haven't brought up the word adjacent yet. Dealing specifically with adjacency, those are talking about those two center sections, which first of all are not in the center, and second of all, there is nothing in the reference that even shows two contiguous sections. And yes, our proposed construction of that term is that for it to be adjacent, it would have to touch... You did argue in your brief, though, that one of the problems with... that there's a requirement that there be gaps in the sequence. I don't believe I argued that we require that there be gaps. I believe we require that there be no gaps. I'm sorry, no gaps, yeah. For it to be sequential. No, for them to be adjacent. If you look at the definitions, the examiner provided... Cannot be sequential as they are not disclosed as being... The embodiments of curly cannot be sequential as they are not disclosed as being in succession without gaps. Ah, I understand. When we talk about succession without gaps, we're talking about in this ordered sequence that there has to be some succession between the different sections. When we talk about, and I confused without gaps with the physical structural arrangement, which comes into play with the word adjacent, as it applies to the word sequential, we're talking about a sequence where without gaps you can't skip one of the sections. Dealing with the specific definition provided by the examiner for the word aligned, which is in the joint appendix at A79, you see something curious. We have in this definition four separate definitions as indicated by the numerals, but then within the first definition the examiner has cut out... What page is that, Mr.? A79 of the joint appendix. 79? Yes. I don't have an A79. Alternatively marked as number 37. Oh, I'm sorry. I was looking at the number at the bottom of the page, not the A number. I apologize. Okay. Looking at this definition, and the examiner kindly provided an arrow to the specific portion that she was using, she has ignored fully half of the definition. She has focused exclusively on to adjust according to a line, but neglects the portion of this single definition that is to arrange in a straight line. If you look at Figure 1 of Curly, you will see that the four sections in question here are not arranged... I think that's because to bring into a straight line is a more narrow definition, and when they're looking at this, the patent office looks at the most broad construction. The patent office does have a duty to give the broadest reasonable construction. And that's bringing in line, not straight line, isn't it? However, I would propose, or I would suggest, that when one reads a dictionary definition, one does have to take the entire dictionary definition in that understanding. Are you suggesting that bring into a line is not a definition of a line? To adjust according to a line is. Because in that case, for example, you draw a straight line. Wait, you're saying straight again. I'm sorry. It doesn't say straight anywhere. It does not say straight. You are correct, Your Honor. I believe that would be understood by those having ordinary skill in the art, but even the patent office does not suggest that a curved line might suffice for this. But the whole reason for this broadest reasonable construction protocol is that if, in fact, there is a debate as to how broadly a term should be used, this is an easy chance to fix it. Just put your argument, which distinguishes from the prior art, put it in the claim. And doesn't that end the debate about broadest reasonable construction rather than asking us to decide it? It certainly would end that question, yes, Your Honor. We are a little bit past that point now. Indeed, we are. I maintain, however, that looking at this single definition provided by the examiner herself, she shouldn't be able, when she supplies her own evidence, to cut and paste within a given definition. This evidence exists in order to convince people looking at the record that this is what the claim term means. And she had ample opportunity to find a definition, if one were available, that did not include to arrange in a straight line. That word straight is in the definition. It's in this same definition that the examiner herself used but chose to ignore because it was inconvenient. I am in my rebuttal time, if I may. Yes, let's hear from the office and we'll save the rest of your time. Mr. Mattel. Your Honor, Appellant Blondie has attempted to focus this case solely on the issue of Curley's Figure 1 and whether that figure alone renders the claimed invention obvious. The Curley reference's disclosure, however, is far broader than its just-preferred embodiment yoga mat. The Curley reference, in its own words, describes an exercise mat with hand and foot stations that are removable and exchangeable. This is from paragraph 50 of the Curley reference at page 422 of the record. Curley goes on to note that the number and location of these hand and foot stations can be varied according to the exercise for which the mat is used. Curley also gives this specific example of using the mat, for example, for karate and says if it were used for karate, then in the words of Curley, the hand and foot stations would be arranged to correspond to the fundamental practices of karate. And finally, it's clear that Curley is a very broad disclosure. At the front of this published application in the abstract, Curley makes clear that this isn't just about yoga or even just karate, that this invention could be used for any type of exercise program, dance routine, and so forth. The board, in interpreting or understanding the disclosure of Curley, concluded that a dance routine is reasonably understood to include a gymnastics movement, the very thing that Appellant Blondie claims. Importantly, for purposes of this appeal, that finding by the board is uncontested. It was neither challenged before the board or in the briefing of this court. There's no challenge to the board's conclusion that Curley's dance movement would include a gymnastics movement. Therefore, what we have before this court at this point is an invention that also involves removable and exchangeable hand and foot stations that can be used for the same set of activities as those claimed by Appellant Blondie. And much of the briefing and argument is focused on particular claim limitations relating to the particular placement and location of the hand and foot stations. But it's important to note that the placement of those hand and foot stations doesn't serve any purpose beyond simply, in the words of Claim 14, indicating the proper sequential execution of a cartwheel or other gymnastics movement. In fact, in her brief before this court, Appellant Blondie has even confirmed and emphasized that point. She says at page 24 of her brief, the specific arrangement set forth in the claims is set by the goal of providing training for a specific maneuver, the cartwheel. Therefore, when the Curley reference discloses using these pieces for the same set of purposes, what's uncontestedly the same set of purposes, it necessarily also discloses conforming them to those same activities and effectively meets those same limitations. I'll also address the additional point raised in the brief of indicators. Just briefly, Appellant Blondie contests the board's finding that the claims are reasonably construed to only require one indicator and therefore are met by Curley's disclosure of a single indicator. Appellant Blondie has not contested that Curley does disclose one indicator, but argues that her claims require an indicator that's linked to each of the sections rather than one indicator for the entire map. The claims on appeal, however, only require at least one or an indicator in Claims 1 and 14. At least one is obviously satisfied by just one. And this court in its 2008 decision in Baldwin Graphic Systems v. Siebert, which is cited in the red brief, made clear that the understanding that the indefinite articles A or N can be satisfied by just one, meaning at least one, is more than just a mere presumption and is a rule. That rule governs this case and provides more than adequate basis for the board's interpretation. What sort of rule are we talking about? What is the obligation of the board in the office if it does look that giving the claims a broadest reasonable construction, they're too broad? But if it were to look to the board as if a more restrictive claim might at least distinguish the prior art that the board is relying on, isn't there an obligation to try and advance the relationship while it's still in the office to proceed to some sort of resolution that might be satisfactory? That is correct, Your Honor. The board in the office's primary obligation is to give the claims their broadest reasonable interpretation in view of the specification. And all of these issues, questions about adjacent and aligned and sequential, were issues that were raised by the examiner herself when the case was still before the office. That really wasn't where I was trying to go. I'm trying to understand where the broadest reasonable interpretation, assuming it's reasonable claims, goes beyond the specification may reasonably be construed as going beyond what the applicant has identified as the invention, but that there may nonetheless be a properly claimable invention described. What is the role of the office in that circumstance? Well, on the one hand, implied limitations that appear only in the specification wouldn't be read back into the claims. But on the other hand, again, our primary role is to tease out at least those ambiguities that become apparent during prosecution so that if the patent issues, the public at large would know exactly what is claimed. And so if an issue does become apparent during the examination and the examiner finds something ambiguous and asserts that as a ground for rejection, for example, the obligation would then shift to the applicant to amend the claims or to at least seek clarification through the specification as to exactly what is the invention, what is claimed. Anything else you need to tell us? No, although the bulk of the debate has been about figure one, I'm happy to review that evidence. I sense a lack of enthusiasm for that, and it's all you look for. Thank you, Mr. Mattel. Mr. Ryan. With my remaining time, I would just like to emphasize that what Mr. Mattel just described as being the issue really comes down to a question of function, and that's not what we're arguing. What we're arguing here is structure. Our claims recite specific structural features. The reference does not teach those features. Even taking into account paragraph 50, which does allow the user to reconfigure it for their purposes, even taking that into account, there's nothing in the reference that in any way addresses a cartwheel or in any way suggests the specific structures that we've set out. Without that suggestion, without that knowledge of those having ordinary skill in the art, this application cannot be obvious, and the Patent Office, therefore, has failed to meet their burden in establishing it. Any questions for Mr. Ryan? Thank you. Thank you both. The case is taken under submission. All rise. The Honorable Court is adjourned from day to day.